et al, number 08-4082. Thank you, Mr. Tolginus and Ms. Blasky. Good morning, Your Honor. Tom Dalton is from the Philadelphia DA's office for the Commonwealth of Pennsylvania. I'd like to reserve two minutes for rebuttal, if I may. The affiliate Curtis Brinson was originally convicted more than 20 years ago for murdering a man named Arthur Johnson in a violent robbery. The district court granted habeas relief after we dropped our opposition, and his retrial is scheduled to occur a few weeks from now. The issue in this case is this. How much time has elapsed altogether from the – in other words, after the – you were initially given 120 days to retry, and how much time has taken place since then, forgetting for the moment who was responsible for it? I believe, Your Honor, the order was issued in March of 2007. So we're now – it's 25 months. That's – I guess that's correct. And the issue in this case is when a federal court grants a conditional writ and sets a deadline for a state court retrial, what happens when the defense asks the state courts for more time? And the only answer that makes sense is this. When a defendant asks the state court for more time, he can't then complain to the federal courts that his retrial is taking too long. And so you're saying that not a single extension was requested by you? Several of the extensions were joint requests. But every request was either singly or jointly requested by the defense. The first request was after 119 days. Is that correct? 119 or 118, Your Honor. Okay. So we're only dealing now with one or two days to violate. And there are a number of periods of time where I could not find any specific request for extension. We did our best in the hearing below to account for every single period of time. With respect to the initial 120 days, it's true that when we were in court on July 5th, 2007, that was the first time that we were formally, you know, in front of a judge asking for a continuance. It doesn't mean that was the first time that the parties had talked about the case. It doesn't mean that was the, you know, we woke up that morning and decided that we would continue the case. But still, I mean, the district court didn't say any time you talk about the case in this 120 days, we will toll the running of 120 days, right? The court said you get ready for a trial in 120 days. And that obviously would require talking about the case. So nothing was done until, what, day 118 or day 119? That's where I disagree, Your Honor. I think things were done. The parties were discussing a possible plea agreement. And so when you get to day 118. I just said the court did not exclude periods when the parties were talking together in the 120 days, did it? No, it did not. All right. So then we get to day 118 or 119, and we have one or two days to deal with. And even if we're just dealing with one or two days, and the defendant participated in the request for continuance, is it an abuse of discretion for the district court to say you didn't move fast enough? Yes, in this case it is. And a couple things. First of all, while you're correct that ultimately we're looking at an abuse of discretion standard, and we believe it's an abuse of discretion, it's actually a compound standard. Because this court has plenary review over what types of conduct are excludable and not excludable. This court and also the district court are obligated to accept the state court findings and attributions about who is responsible for what delay. And remember, in this case, every single time there was a request, we showed in the hearing below in front of Judge Fulham, every time there was a delay, the delay was requested either alone or jointly by the defense. Now, Your Honor, you raise the point about, well, there were two days left. In a conditional deadline, this court has stated in Gibbs, and it makes perfect common sense, that every conditional deadline incorporates reasonableness. It has to. And that comes within the discretion of the district court. So how is the district court unreasonable? Because, well, number one, the district court was absolutely wrong as a matter of law to determine that defense requests were not unreasonable to count against the government. Why? Because it's a simple matter of equity, Your Honor, a simple matter of common sense, that if one party, and judicial estoppel as well, if one party asks one court, remember the state court is being asked. Let's take a hypothetical that the Commonwealth of Pennsylvania is telling the petitioner that we're going to work out a plea agreement, and then they sit and they say, you know, don't do anything, we'll work it out, we'll work it out. And six months pass, and the Commonwealth hasn't done anything. And the petitioner is still sitting there, not moving forward on demands, in this case, go to trial, because the Commonwealth is saying we're going to work out a plea agreement, and the Commonwealth drags its feet. Can't the district court, as a matter of equity, consider whether that delay was due primarily to the Commonwealth rather than to the petitioner? Where the petitioner goes to state court and says, I want more time. Does he have to go to state court? I mean, in considering the passage of time, can't the district court consider, well, the Commonwealth said we were working out a plea agreement, but nothing was happening. And maybe the Commonwealth was dragging its feet, purposefully, in working out the plea agreement. And isn't the district court then justified in saying, you didn't move forward fast? There may be some extreme case where the delay is a sham, the government acts in bad faith. That's not this case. There is no evidence that the government was acting in bad faith. And, in fact, the defense counsel testified specifically that he believed the government was acting in good faith. There is no evidence of bad faith in this case. What Your Honor is talking about is, if you put yourself in the position of the petitioner, and the government is taking a long time to decide whether or not to accept a lesser degree of murder plea in a very serious murder case, there is no requirement that the defense continue to request for more time. What the defense was doing in this case was, as a matter of strategy, saying to us, you go ahead and take all the time you want to decide. I will take responsibility. It wasn't simply acquiescence. Is that on the record? Absolutely. Every time that there was a, the meaning of taking responsibility is asking the court for more time. It's not simply acquiescence. But of the petitioner saying, you take all the time you want. Well, I think that's pretty much what Mr. Doyle testified to. I think Mr. Gelman said that he spoke to Mr. Doyle many times during these periods of months. We have a record. In the record we have letters from Mr. Gelman to the prosecution. I hereby waive my federal deadline through August. You're talking about the record before the district court. Absolutely, Your Honor. Did the state court and did the state's highest court conclude that the delays were requested by the defense or concurred in by the defense and that they were excludable under Pennsylvania law? Did the court make that finding in the state court? Yes. If you look at the state court docket, there are many instances where the docket reflects TRE, time ruled excludable, which is a finding with respect to the state speedy trial. Are we bound by the Pennsylvania Speedy Trial Act? No, obviously not, Your Honor. But I would say the state speedy trial act is implementing, is designed to implement the federal constitutional standards just as the federal speedy trial act is. And we've cited United States v. Field that under the federal speedy trial act, if the U.S. attorney was up here, this claim would fail. We're not bound in this case by the federal speedy trial act either, are we? No, but you are bound by the federal constitution. And to the extent that the state rules and the federal rules are trying to implement the federal constitutional requirements, what Your Honor is bound to hold is that the state court's continuances and extensions based on defense requests violates the constitution. There can't be relief granted here simply because the court would like it to have taken less than 10 months. I mean, frankly, sure, 10 months is not a short time. But I don't have to tell this court that things take a certain amount of time. In this court, in the federal district court, we're not talking about unexplained years. Gibbs v. Frank, which I think we cited in our brief and I think frankly controls this case, it almost went without mentioning that in that case, after the conditional deadline expired, 45 days later the petitioner asked the federal courts to prevent his retrial, then a year went by when the complaint was languishing in federal court. Now, I don't say that in order to say isn't that a terrible thing. I'm simply saying that a 10-month delay when the people are speaking, when the parties are speaking to one another, we're going before the state court judge every 30 days, like clockwork, saying we're still talking, time rule excludable, defense request for more time. When the defense counsel sends us letters saying I hereby waive my federal deadline through August and then I want to make clear, he says in another letter, this is I think at 144, the appendix, that all the continuances up to this point, that was November of 07, I think. It's at 143, I think. 143 and 144, I think they're two different letters. There's actually a third letter there, but I'm not referring to that now. Those kinds of discussions, remember, impact how we deal with this case. If there were no plea negotiations at all, if we had no contact with Mr. Gellman, then I would be up here trying to defend sort of the internal processes of the DA's office or the state court system or the public defender's busy schedule. But the rule is relatively simple when the defense takes on the responsibility and says don't worry about the time. I think it works to my advantage if you take your time to consider a plea. It doesn't give, to be frank, cut both ways because it gives very broad discretion to the district judge here to evaluate what's too much time or should an extension be granted. Well, Your Honor, it does speak in terms of discretion, but it also says specifically, quote, any delay brought about by a continuance request from the defense should not be included in the 120-day time frame. And you're also supported by the recent Supreme Court decision in the Brilliant, I believe, where it says that under the Speedy Trial Act, any requests by the defense are not counted. That's correct. But the question here is a more nuanced one, and that is if it's a joint request and it's one done at the tail end of the initial 120-day period, can a judge, does a judge have the discretion to say that I think X is more responsible than Y for the delays and I'm going to count those delays against the 120 days and not toll them? If I may, Your Honor, number one, I think the fact that it's a joint request means both parties request. It doesn't mean there's one party requests more than the other. I mean, the defense could have not joined in the request. I mean, that was an option open to force our hand. But that's not my question. That's not Judge Ross' question. The question is can a court, does the court, as part of the exercise of its discretion, have the authority to say that, yes, both sides have requested an extension, but I believe that X number of days should be counted against the 120-day period to have the retrial for these reasons? I think under Gibbs the answer is no, if there's a defense request, except in a hypothetical case of bad faith, and which we don't have here, because there is no evidence of bad faith. And, in fact, the evidence of bad faith... Well, isn't this really the next case after Gibbs, the next issue? If a judge has, I mean, you could take Gibbs, and, again, it seems to cut both ways. If you say a judge has broad discretion in this arena of counting the 120 days or whatever continuances might exist beyond the 120 days, then why does the judge not have the discretion to say I am, as a result of this joint extension, counting X number of days against that time period? I see my time is up. Go right ahead. If I can answer. I have another question after that, too. I guess we're disagreeing about Gibbs. I mean, I understand your point that this is the next case. I would say this case is already covered by Gibbs, and that what Your Honor is proposing would be an exception to Gibbs. And in order... It's quite clear that the federal court has to look at reasonableness. And Gibbs said, in accordance with the federal speedy trial rule, on the state speedy trial rule, that when the defense asks for a continuance, it is reasonable for there to be a continuance with respect to the defense's rights to a quick trial. So I think... So my answer to your question, Your Honor, is I think Gibbs already covered it. I think it would be not an extension but a contradiction to say that in a case where there's joint requests or where there's no bad faith but we disagree, we think it should have been faster. I think that would be new territory rather than simply an extension. Isn't... This is a homicide charge, so there's no statute of limitations. That's correct. And so isn't the real issue here whether the petitioner sits in jail waiting for you to decide on a retrial or he's set free while you decide on a retrial? In Vermont v. Brilliant, the court said that when the defense counsel, whether it be a public defender or appointed counsel, speaks to the state court and asks for more time, that counsel is speaking for the defendant. That's not my question. My question is isn't the real issue here whether the petitioner waits for the new trial out of jail or in jail? Isn't that the bottom line? That may be the effect, yes. I mean, obviously, it's the effect. We're not here. This is not an advisory opinion. We have a man in jail who's facing a murder charge. He was convicted once of murder. But there's no statute of limitations. So whenever the Commonwealth of Pennsylvania feels it should pry him on this charge, it is free to do so. Yes. But I should say that it might be obvious to me that if this court granted him, if this court said the deadline was violated, it might be obvious to me, we would argue, of course, that this defendant could be rearrested. I guarantee you it wouldn't be obvious to defense counsel who would use Judge Fulham's order or any other order to say he should be set free immediately. There would be litigation. It's not simply paper shuffling to that extent. My time is up, Your Honor. I'll see you in a minute. Thank you very much. Thank you. Ms. Blaske. May it please the Court, I am Rebecca Blaske, and in addition to Mr. Wyckoff and Mr. Nolas, represent the appellee, Curtis Brinson, in this matter. It is actually my first opportunity to appear before this Court, and I'm very proud and pleased to be here this morning. Glad to have you. The first question, I guess, is what was Mr. Dulcinius mentioned on pages 143 and 144 of the appendix. There is a letter from counsel there to Mr. Brinson stating that, quote, all of the continuances granted, and I'm skipping over, have been at the request of the defense and none are chargeable to the Commonwealth. I mean, doesn't that sort of, isn't that game set and match? Your Honor, that is what he indicates, but that was sent on November 28, 2007. It was not provided to Mr. Brinson, and it was some months after the expiration of the 120-day period. If I could just back up to one of your questions that you posed to Mr. Dulcinius, Judge Ambrose, you had asked how many days had elapsed. By our calculations, 720 days have elapsed since Judge Fulham issued his conditional ruling. How many of those 720 days have you not agreed to by way of a continuance? Well, Your Honor, I think we have to look at the context in which the agreements were made. This was clearly a case in which a plea was contemplated by all sides. And just for a moment, Judge Roth, to go back to your question, Judge Fulham found that July 5, 2007, where the joint request for continuance was made, was the expiration of the 120-day period. So that's when the 120 days were made. Let me ask you about the context. There were negotiations, at least initially, about a plea agreement. Yes, Your Honor. And that would have been a plea agreement to third-degree murder, rather than the pending charge, which is first-degree murder. Is that correct? Correct, Judge Alicante. Is there a difference of time here that the defendant was facing? Should he have gone back and retried and found guilty of first-degree murder? Yes, Your Honor, there would have been a difference. And what would the sentence be for first-degree murder? For first-degree murder, Your Honor, it would have been a life sentence. And for third-degree murder, it would have been essentially the time served. And if he had been able to get the plea agreement, he could have been released immediately? Yes, Your Honor. Based on time served? I believe there was a range of 12 to 25 years, Your Honor, and he had already served about 22 of those years. So I'm not clear on the context that we're talking about. Well, Your Honor, if I may, the context that we're talking about is that all sides were anticipating, and certainly what was in Mr. Gelman's head and what the Commonwealth knew was in Mr. Gelman's head, was that the case was going to be resolved. So while these continuances are happening, I think it must be viewed through the lens of the fact that Mr. Gelman believed that by acceding to these requests, he was going to be effectuating a plea for his client. And it was in his interest, should he have gotten the plea agreement. And it was in his interest, but unfortunately he waited in vain for a plea that was never to come. The additional indicia of the fact that that's what he believed was that 10 months later, when he found out that no plea would be forthcoming, he made plans to withdraw from the case so that other counsel could be appointed. And if I could return for just a moment. Do you believe there was not, extant, a continuance at the request of the defense? Your Honor, we would submit that the period that we should be talking about is the period between March 6, 2007 and July 5, 2007. That's the 120-day period. Well, if you're going to 2007, that November 2007 letter that we talked about wipes that off. Your Honor, I don't believe it does, because the period between March 6, 2007 and July 5, 2007 is the period in which nothing is happening. And I made a list here for the Court of all the things that the Common Law does. So you're saying that, in other words, there was no continuance granted for that period of time? Yes, that's what I'm saying, Your Honor. So March, would you say March what? March 6, 2007 is when the order was signed, Your Honor. It was entered on March 7, 2007, and the expiration of that 120-day period, as Judge Pullum found, was July 5, 2007. That is the point at that 120th day, at that 11th hour, in which the Commonwealth and Mr. Wait a minute. I'm sort of lost. He entered an order granting an additional 120 days from March to July? Yes, he did, Your Honor. And may I simply add, that's the period of time that the Commonwealth requested. They asked for that period of 120 days to either release Mr. Brinson or to withdraw. Then I come back to my letter. Then why did the letter say in November of that year that, quote, all of the continuances granted had been at the request of the defense and none are chargeable to the Commonwealth? Well, Your Honor, I don't believe the letter takes into account the fact that there were joint continuances made. Certainly the July 5th continuance that we're talking about. What I'm saying is, let's assume you're right with respect to March to July. Let's assume you were right at one point. I mean, doesn't this letter waive that right to the extent it exists? Well, certainly, Your Honor, Mr. Brinson didn't waive that right and to the extent that he did. Well, his attorney did. I mean, his attorney stands in his position, right? Well, he does, Your Honor, but there was certainly no colloquy of Mr. Brinson. I mean, I don't know if you have – I don't even think this is ineffective assistance of counsel. This is a question of he's trying – he's got a reason, I assume, which is he's trying to get a plea negotiated. He does, Your Honor. And certainly what's clear from the record is that up until about August or mid-August of 2007, Mr. Brinson was willing to wait for that plea negotiation, which unfortunately never came. So subsequent to November of 2007, how many days were there – was there not a trial that can be attributed to the Commonwealth? That is, there is not a joint continuance request extent that's been granted by the Court. Well, our position would be all of those days then going forward. And let me just go back to – Were there any continuances after November of 2007? I beg your pardon? Were there any continuances granted after 2007? Your Honor, I'm sorry, Your Honor. I'm not able to answer that. I mean, if there's not, then you're in good shape. But if there are, then don't you have a problem? February 19th, 2008 to April 10th, 2008, but then there's a gap that I see from April 10th, 2008 to May 7th, 2008. That's correct, Your Honor. But all of those continuances were after Mr. Gelman was off the case and Mr. Siegel had come onto the case. According to Judge Fulham's order, and our position is Judge Fulham absolutely did not abuse his discretion in this matter, according to his order, the first 10 months of delay were the result of the extraordinary length of time that the Commonwealth took to decide whether or not it would provide a negotiation in the case. And he found that there was no legitimate reason for that 10-month period of time. Was that an abuse of discretion to interpret that 10 months in the way that he did? Your Honor, absolutely not. Under Gibbs, he is entitled to interpret his own order however he sees fit. He's to be given wide latitude. In the Chippewa Native American case that we cited to Your Honor, it's a fundamentally wrong standard. Was Judge Fulham fundamentally wrong in interpreting his order as he did? Absolutely not under our position. Secondly, he found that the remaining delay that Your Honor mentioned from January 2008 up to the present day can't be attributed solely to the petitioner because there was so little accommodation made for Mr. Siegel's schedule. He found that the delay could not be laid at the petitioner's door, and we're asking this court to affirm that. Isn't that finding contrary to the state court's finding? Your Honor, I don't believe it is. The state court was making findings with respect to the, I believe Your Honor is referring to the TRE language that's contained in the paralegal notes or the secretary's notes. I'm talking about the highest court in the state saying that there were delays here, but they were all at the request of the defense. Well, there were the time rule excludable notations made in the file, Your Honor, but that was with respect to the Pennsylvania speedy trial rule. That in our position had nothing to do with Judge Fulham's order and his interpretation of his own order that the Commonwealth had to go forward with him. But don't we have to presume that the findings of the state court are correct on the 2254 proceeding? Certainly factual findings would be reviewed for clear error. Is that Your Honor's question? My question, I'm looking at 2254E1, and it says a determination of a factual issue made by a state court shall be presumed to be correct. Well, Your Honor, again, I think that those time rule excludable notations were made for the purpose of the Pennsylvania speedy trial rule, which is a very different issue from what we're discussing. In the ten months that took place from July of 2007, excuse me, from March 6, 2007 to the end of January 2007, the state did not prepare for trial. They did not announce ready for trial. They did not assign a prosecutor even until after the 120 days had ran, well after. They didn't go retrieve the file from the district court. They didn't ask Judge Fulham for more time because they didn't have the file. They attribute the not having the file to an inadvertent delay by the court, an inadvertent failure by the court to return it, which certainly makes it sound like it would have been easy enough for them to go and get the file. They didn't prepare any pretrial motions. They didn't begin to do anything to move. But in that context, were you under the umbrella of a continuance? During that period, no, Your Honor, because that's the initial 120-day period that's covered by Judge Fulham's order. They didn't even litigate. Are you talking about 2007 or 2008? Talking about 2007, Your Honor, during all of this period of time that's covered by Judge Fulham's order. In 2007, I still run into the roadblock of the November letter. So it seems to me that post-November 2007, what of the 120 days are attributable to the Commonwealth and not to the Commonwealth and the defendant jointly? It's a factual issue. That's what I'm trying to nail down. Yes, Your Honor. Because if there is, and then the court gets fed up in October or whenever of last year and says I've had enough, then you've got a pretty good case. Well, that's certainly what Judge Fulham said. But if there isn't a period of time that you haven't agreed to with respect to a continuance, then you're not in nearly as good a shape. Well, Your Honor, it's clear that there were two continuances that Mr. Brinson concurred in. One was July 5th and one was July 25th. At that time, the Commonwealth assigned a prosecutor. And may I just say, Judge Ambrose, this is a case from the State's perspective, and we do not concede this, this is a case from the State's perspective in which all that is required to retry Mr. Brinson is to put somebody in the witness box and read answers from the notes of testimony as they are opposed to that witness. This is a case from their perspective. Again, we don't concede that this is appropriate, but a case that would be very, very easy to put together. And I think that that's another factor that Judge Fulham considered because there was considerable testimony about that at the evidentiary hearing on September 18th, 2008. When you say July 5th, you mean 2007, right, not 2008? July 5th, 2007, Your Honor, yes. Okay. What I'm exploring is what happened in 2008 that's attributable to the Commonwealth. Well, according to what Judge Fulham found, Your Honor, that delay could not be attributed solely to the petitioner. Isn't that finding by the District Court contrary to what the State Court found? And don't we have to presume that what the State Court found is correct? Shouldn't the District Court have presumed that? I don't believe so, Your Honor, because certainly Judge Fulham could interpret his own order. He would have wide latitude to do so. And Mr. Delgenos has conceded that the Pennsylvania Speedy Trial Act doesn't apply here. Isn't that correct? Yes, Your Honor. The period from August 16th, 2007, until January 3rd, 2008, was there any continuance in effect? I'm not aware of any at that time, Your Honor. The period from April 10th, 2008, to May 7th, 2008, was there any continuance in effect? I'm not aware of any during that time period. The period July 5th, 2008, until June 19th, 2008, was there any continuance in effect? I don't believe so, Your Honor. And I believe that that's the time when Mr. Siegel was present and the matter was set for trial before Judge Robbins knew. I'm not quite sure I understand. Didn't the appointed defense counsel request a continuance in order to prepare for trial? Your Honor, according to what Judge Fulham found, there was very little accommodation that was made to his schedule. There was some discussion of trial dates, but no discussion of either assigning the case to a different judge or assigning a different lawyer who would have been available to try the case. That's not quite my question. My question was, didn't the appointed counsel ask for a delay to prepare for trial because of his schedule? Yes, Your Honor, I believe he did. And isn't that then a defense request for a continuance? It would be, Your Honor, but, again, that's well past the period of time that I would urge the court to focus on, which would be between May 6th, 2008. I was just concerned about your answer to Judge Roth's question. There was a continuance requested by the defense for counsel to prepare for trial. Your Honor, then I must have been mistaken as to the date, and I apologize. Thank you. We'll hear from Mr. Dolginus. Thank you. If I may, first with just something that you said, Judge Roth, when you said that we've conceded that the state speedy trial rule doesn't apply here, that's correct. But what does apply here is the conditional deadline and the reasonableness component, which has to be interpreted as consistently as possible with the state speedy trial rules. In other words, if there's no reason to set federal and state law against each other, then there's no reason to do it. You want to avoid friction if possible. It's fortunate here because everything's pointing in the same direction, which is that under the state speedy trial rule, federal speedy trial rule, federal constitution, defense requests for more time don't count against the government. Post-November of 2007, what is the number of days for which there was a gap, that is, no continuance granted by the court? None, Your Honor. First we have the letter that you're referring to is November 20, 2007, which is at A-43, A-143, excuse me. On November 29, 2007, we had testimony that on that day, this was the paralegal notes that we talked about with Mr. Gelman and Mr. Doyle at the hearing below, that not every continuance or court date makes it onto the state court docket. There was a defense request for continuance on November 29, which makes sense because that was the day after the letter was sent, to January 3, 2008, and that's the paralegal notes there are. So defense request, that's to January 3. Right. January 3, we have on the docket, no, this is paralegal notes and file markings, and again, we discussed this at the hearing, TRE, time rule excludable joint request. And that covers what time? January 3 to January 29. I think actually on the January 3 markings, there's no end date. But the next thing that happens, January 29, 26 days later, that is on the docket. It says hearing notice. Again, the paralegal notes, the file markings, and the testimony at the hearing were that on January 29, that was TRE, time rule excludable, and Mr. Siegel was appointed as counsel. So that gets you from January 29 to what day? February 19. Okay. And then I think on February 19, again, paralegal notes, file markings, and in the hearing, defense request for continuance to 3-17, time rule excludable. Okay. 3-17, the docket says hearing notice, but the paralegal notes, the file markings, and at the hearing, defense request for further investigation and preparation to 4-10, time rule excludable. Okay. Now what about 4-10 to May 7? 4-10, the docket says hearing notice. The paralegal notes on 1-47, the file markings on 1-46, and at the hearing, TRE, STAT, further investigation. So it's... That's to 5-7. To 5-7. I'm not sure as I'm standing up here whether the date 5-7 appears in the file markings or the paralegal notes. It might. I don't have quotes here. And then what after 5-7? On 5-7, we have the paralegal notes again, and this is actually on the docket, defense request for final pretrial investigation, time rule excludable. And that's from 5-7 to what? To 6-5. Okay. 6-5, case assigned to Judge Robbins-New, status scheduled for 6-19. That's from, I think, the paralegal notes. Is that the... You know, I don't have here that it was specifically time ruled excludable. Yeah. But I would say, Your Honor, that, frankly, a two-week delay in order to give it to a particular judge would generally not be counted heavily against the government. Is that from 6-5-08 to 6-19, or is it to 7-19? No, it's 6-5-08 to 6-19. Okay. And then 6-19 is the docket, continue for trial, earliest possible date consistent with defense attorney calendar, time ruled excludable by agreement from 6-19-08 to 6-9-09. 6-9-09? Yes. A year? Yes. The earliest possible date consistent with defense counsel's schedule, which, again, under Vermont v. Brilliant, that's the 2008 time. The 2008-2009 time, once new defense counsel is assigned to the case and it's simply a matter of scheduling the case, that's directly controlled by Vermont v. Brilliant. That's what that case says, that time requested by defense counsel isn't counted against the government. Your Honor, I think before I finish, if I might just have one more minute, the consequences of the district court's ruling, if defense requests for more time don't extend the deadline, and then if the state has the obligation to remove busy lawyers and busy judges from the case, then we're going to have to adopt the baseline rule that we oppose all defense requests for more time. If the defense lawyer has scheduling conflicts, then he has to be removed whether the defendant wants it or not, and the same goes for state court trial judges. I mean, that's a recipe for disaster, and it won't be long before these defendants are here saying, we were railroaded into trial before we were ready, and that's a serious claim. So no further questions. Thank you very much. Thank you. We'll take a ten-minute recess.